**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| HEY LET'S GO, INC., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> KAPSCH TRAFFICCOM USA, INC., ) <br> ) <br> Defendant, ) <br> ) <br> v. ) <br> ) <br> BANK OF AMERICA, N.A. ) <br> ) <br> Trustee Defendant ) <br> ) | Civil Action No. 22- |

**COMPLAINT & JURY DEMAND**

Plaintiff HeyLet'sGo Corp. ("<u>HLG</u>") asserts the following Complaint against Defendant Kapsch TrafficCom USA, Inc. d/b/a Uproad ("<u>Uproad</u>"):

**INTRODUCTION**

1. This Complaint arises from Uproad's failure to honor the terms of a May 2, 2022 Statement of Work ("<u>SOW</u>") between it and HLG, which required Uproad to pay $75,000 for the development of a creative advertising campaign for Uproad. Instead of making the required payment when due, Uproad repeatedly promised that the payment was forthcoming and would be wired to HLG. Uproad used its promises to pay to extract added benefits from HLG. First, Uproad requested, and HLG performed, additional edits for the assets delivered for the advertising campaign at an additional cost of $4,000. Second, Uproad used its repeated promises to pay to convince HLG to release the assets it developed for Uproad to Uproad so that Uproad could publish the assets on various media platforms, including digital and social media and out-of-home

1

billboard placements.  Despite HLG's full production and delivery of the contracted and approved work, Uproad has refused to pay for it.

## PARTIES

2. HLG is a Massachusetts corporation with a principal place of business located in Boston, Massachusetts.

3. Defendant Kapsch TrafficCom USA, Inc. is a Delaware corporation with its principal place of business located at 855 Premiere Parkway, Suite F, Duluth, Georgia.

4. Trustee Defendant Bank of America, N.A. is a national bank holding assets of Uproad.

## JURISDICTION AND VENUE

5. Federal diversity jurisdiction exists pursuant to 28 U.S.C. § 1332.  Plaintiff is a Massachusetts corporation with a principal place of business in Massachusetts.  Defendant is a Delaware corporation headquartered in Georgia.  Therefore, complete diversity of citizenship exists.  The amount in controversy, exclusive of interest and costs, exceeds the sum or value of $75,000.

6. This Court has personal jurisdiction over Uproad because Uproad transacted business in the Commonwealth of Massachusetts as required by G.L. c. 223A, § 3.  Defendants engaged with HLG to negotiate the scope and the formation of the SOW in Massachusetts.  Additionally, Uproad engaged in extensive post-contract communications that relate to the operation of the SOW and the deliverables required under the SOW.  In particular, these communications addressed drafts of the advertising assets prepared by HLG and feedback from Uproad before such products were used by Uproad on various social media outlets.

7. Venue is proper pursuant to 28 U.S.C. §1391 and 28 U.S.C. §1367.

## FACTS

**A. HLG is Engaged by Uproad to Create and Deliver Creative Assets for an Advertising Campaign.**

8. In March 2022, Digilant Inc., a media-buying agency that HLG worked with in the past, referred Uproad to HLG.

9. On April 1, 2022, Uproad and HLG executed a Phase 1 statement of work to develop creative concepts for a summer brand campaign for Uproad's App., which allows for the mobile payment of tolls in certain states.

10. The Phase 1 scope called for HLG "to provide creative ideas to build broader awareness for the Upwards[sic] App. through an orchestrated paid and organic brand campaign."

11. HLG charged Uproad $25,000 to implement Phase 1.

12. On April 22, 2022, HLG invoiced Uproad $25,000.00 for the Phase 1 work.

13. Uproad eventually paid this invoice in July 2022.

14. With Phase 1 successful executed to the client's satisfaction, on May 2, 2022, HLG was awarded a Phase 2 SOW. The SOW called for HLG to "partner with Uproad to develop and produce the "Back-Up Camera" brand campaign (the approved creative idea from Phase 1) for a summer launch. *See* Ex. A. The SOW required HLG to refine, produce and deliver advertising assets in accordance with "the media plan including, but not limited to, static or animated banner ads in various sizes and formats, video cut down, print files, [and] audio." *Id.*

15. The SOW provided that HLG "will invoice the project in one installment of $75,000, due 30 days after receipt of invoice." *Id.*

16. HLG invoiced Uproad $75,000 on May 24, 2022. *See* Ex. B.

17. Uproad has not paid this invoice.

18.     HLG fulfilled its obligations under the SOW.  At Uproad's request, HLG fronted the budget for a video production in Massachusetts to promote Uproad's App, featuring influencer Jenna Ezrarik (who Uproad selected and approved), at a total out-of-pocket cost to HLG of $46,983.

19.     After engaging the influencer and incurring production and post-production costs, HLG began to create the assets for Uproad.

20.     Uproad played a major role in reviewing the creative assets developed by HLG, with Slack messages and emails in the hundreds, plus regular production status calls.

21.     For instance, on June 3, 2022, HLG sent over creative assets to Uproad for review to which Uproad provided feedback to HLG on June 8, 2022.  Specifically, Miram Rubin wrote to HLG via Slack, in which she provided substantive feedback of the creative assets.  She guided HLG on which creative assets should be used in particular geographic markets, the legibility of the text used by HLG, the inclusion of a tagline and Uproad's logo on the assets.  Additionally, Uproad made suggestions on the type of video assets that HLG could develop and provided directorial edits to the videos provided by HLG.  All these client changes were made by HLG.

22.     Later on June 15, 2022, Uproad provided further comments and edits to taglines used in the advertisements and directed when and where some of the taglines should be used.  That same day, Uproad approved an Instagram advertising post for Uproad, including the position and inclusion of hashtags.

23.     On June 21, 2022, Uproad provided HLG with additional edits and suggestions for Ms. Ezrarik's videos. As the approved as were already filmed, and the changes were beyond the approved concept,  HLG notified Uproad that some of the suggestions would require an additional cost and time for unexpected visual effects work.  HLG agreed to perform the additional work,

requesting an additional $4,000. The client refused, and indicated that if HLG just made these changes, the work would be completed, HLG would be paid, and the project would be done. With the client now past due in its payment to HLG, the promise to pay was enticing, and HLG agreed to cover the additional $4,000, make the changes and "just be done." Which is exactly what HLG did.

24. On July 7, 2022, Ms. Ezrarik posted on her Instagram account the videos and advertisement regarding Uproad's mobile application.

25. On July 28, 2022, HLG delivered over 60 digital creative assets to Uproad, each of which was approved by Uproad.

26. Uproad then used the assets created by HLG to advertise the use of its App.

**B. Uproad Promises but Fails to Pay HLG.**

27. Throughout HLG's engagement with Uproad, Uproad continually promised to pay for HLG's work.

28. The invoice for the SOW was originally due on June 22, 2022.

29. Uproad did not pay this invoice when due.

30. On June 23, 2022, HLG's contact at Uproad promised to "escalate" the nonpayment issue.

31. On June 24, 2022, HLG's contact at Uproad stated she did not have any update on the payment.

32. On July 5, 2022, before the advertising campaign was launched, Uproad responded to HLG's inquiry regarding the SOW invoice by stating in an email to HLG: "We [Uproad] are hoping to pay later this week - that is the update I have for now. We are truly hounding finance to get this corrected."

33.     On July 13, 2022, in response to a request for payment, Uproad emailed HLG stating: "Since the start of our fiscal year in April, our HQ in Vienna, Austria has been running about 30 days behind in invoice payments for all Uproad vendors. I'm not sure why. Apologies for the delay and thanks for your patience." Uproad also stated to HLG "wire payments are sometimes slow, but you'll be paid any day."

34.     On July 23, 2022, Uproad represented that HLG's invoice for the SOW was submitted and payment would be "any day."

35.     Given these assurances, HLG delivered all assets to Uproad under the SOW on July 28, 2022.

36.     Uproad, however, did not make the promised payment. Later, on August 3, 2022, Uproad apologized for the failure to pay HLG, stating: "[S]o sorry, no official update, just that 'it's coming soon.' [our parent company] [is] so painfully slow, and we have no control. It was NEVER this way before. A little late sure, but this is egregious and embarrassing. It is indeed coming, I can tell you that."

37.     Uproad has failed to pay HLG the $75,000 invoiced under the SOW or the additional $4,000 incurred by HLG to make approved edits for HLG.

## COUNT I
(Breach of Contract)

38.     HLG repeats and incorporates by reference the allegations contained in the preceding Paragraphs of this Complaint.

39.     HLG and Uproad entered into the SOW, which is a binding contract.

40.     HLG fully performed under the SOW by delivering creative assets to Uproad, which Uproad used in its advertising campaign.

41.     The SOW obligated Uproad to pay $75,000 for HLG's services.

42. Uproad has breach the contract by failing to pay HLG the agreed-upon amount in the SOW, thereby damaging HLG.

## COUNT II
(Unjust Enrichment)

43. HLG repeats and incorporates by reference the allegations contained in the preceding Paragraphs of this Complaint.

44. HLG granted Uproad a benefit by creating for Uproad creative assets used by Uproad in its advertising campaign.

45. Uproad did not compensate HLG for this benefit.

46. It would be inequitable and unjust for Uproad to retain the benefits conferred onto it by HLG without paying HLG for its services.

47. Accordingly, Precisely is entitled to restitution from Uproad in an amount to be proven at trial, but not less than $79,000.00.

## COUNT III
(Violation of G.L. c. 93A)

48. HLG repeats and incorporates by reference the allegations contained in the preceding Paragraphs of this Complaint.

49. Uproad actively participated in the creation of the assets with HLG in Massachusetts and repeatedly communicated with HLG regarding such creative assets in Massachusetts. Accordingly, the conduct giving rise to the 93A claim occurred "primarily and substantially within the Commonwealth."

50. Uproad's conduct occurred in trade or commerce.

51. Uproad's conduct was unfair and deceptive where its conduct caused HLG to take action it would not have taken had Uproad been truthful in its representation that payment was

forthcoming. For instance, HLG would not have incurred an additional $4,000 in costs to revise some of the creative assets and would not have turned over all assets to Uproad had it know that Uproad's statement that payment was forthcoming was false.

52. Uproad's conduct was willful and knowing.

53. Accordingly, HLG is entitled to multiple damages and its attorneys' fees pursuant to G.L. c. 93A.

## COUNT IV
(Trustee Process)

54. HLG repeats and incorporates by reference the allegations contained in the preceding Paragraphs of this Complaint.

55. On information and belief, Bank of America holds cash, accounts, goods, effects or credits in the name of, for the benefit of, or on behalf of Uproad.

56. Pursuant to Mass. Gen. Law c. 246, HLG is entitled to attach the cash, accounts, goods, effects or credits held by Bank of America in order to satisfy in whole or in part any judgment against Uproad.

## PRAYER FOR RELIEF

**WHEREFORE**, for all of the foregoing reasons, HLG respectfully requests that the Court:

i. enter judgment in favor of HLG on each Count of this Complaint;

ii. order attachment of Uproad's funds held by Bank of America;

iii. award HLG treble damages and attorney's fees pursuant to G.L. c. 93A;

iv. grant HLG such other and further relief as deemed just and proper.

## JURY DEMAND

HLG demands that all claims so triable be tried before a jury.

                                        Respectfully submitted,

                                        HEY LET'S GO, INC.

                                        By their attorneys,

                                        _/s/ Michael R. Stanley_
                                        Joseph L. Demeo (BBO # 561254)
                                        Michael R. Stanley (BBO# 680957)
                                        DEMEO, LLP
                                        66 Long Wharf
                                        Boston, MA 02110
                                        Tel:  (617) 263-2600
                                        Fax:  (617) 263-2300
                                        jdemeo@demeollp.com
                                        mstanleydemeollp.com

September 27, 2022